UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| **Quintin M. Littlejohn**, | C/A No. 7:06-2520-RBH-WMC |
| Plaintiff, | |
| vs. | **Report and Recommendation** |
| **Congressional Congress of the United States of America**, | |
| Defendant. | |

## *Background of this Case*

The *pro se* plaintiff is under an order of pre-filing review. See Graham v. Riddle, 554 F.2d 133, 134-135 & n. * (4th Cir. 1977).[1] The plaintiff was confined in the South Carolina Department of Corrections until May of 2003, when he "maxed out" his sentence for his 1982 conviction for armed robbery entered in the Court of General Sessions for Cherokee County. The plaintiff is now a resident of Gaffney, South Carolina.

In the above-captioned case, the plaintiff has brought suit against the United States Congress, which the plaintiff calls "The Congressional Congress of the United States" and all agents acting on its behalf or in active concert. In the complaint, the plaintiff appears to be contending that various cases decided by the Supreme Court of the United States,

---

[1] The order of pre-filing review was entered on July 10, 1998, by the Honorable G. Ross Anderson, Jr., United States District Judge, in Quintin Littlejohn v. William J. Clinton, President of the United States, Civil Action No. 6:98-1169-13AK. Judge Anderson's order authorizes the Clerk's Office to assign civil action numbers to the plaintiff's pleadings for docket control purposes.

1

the United States Court of Appeals for the Fourth Circuit, and the United States District Court for the District of South Carolina were wrongly decided. No express request for relief appears in the complaint. The plaintiff, however, indicates in the caption of the complaint, that he is bringing this action on behalf of the Allied Military Government.

## *Discussion*

Under established local procedure in this judicial district, a careful review has been made of the *pro se* pleading and the Form AO 240 (motion to proceed *in forma pauperis*) pursuant to the procedural provisions of 28 U.S.C. § 1915. The review has been conducted in light of the following precedents: Denton v. Hernandez, 504 U.S. 25, 118 L.Ed.2d 340, 112 S.Ct. 1728, 1992 U.S. LEXIS® 2689 (1992); Neitzke v. Williams, 490 U.S. 319, 324-325, 104 L.Ed.2d 338, 109 S.Ct. 1827, 1989 U.S. LEXIS® 2231 (1989); Haines v. Kerner, 404 U.S. 519 (1972); Nasim v. Warden, Maryland House of Correction, 64 F.3d 951, 1995 U.S.App. LEXIS® 26108 (4th Cir. 1995)(*en banc*), *cert. denied*, 516 U.S. 1177, 134 L.Ed.2d 219, 116 S.Ct. 1273, 1996 U.S. LEXIS® 1844 (1996); Todd v. Baskerville, 712 F.2d 70 (4th Cir. 1983); and Boyce v. Alizaduh, 595 F.2d 948 (4th Cir. 1979)(recognizing the district court's authority to conduct an initial screening of a *pro se* filing).[2] This court is required to construe *pro se* complaints and petitions liberally. *Pro se* complaints and petitions are held to a less stringent standard than those drafted by attorneys, Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir.), *cert. denied*, Leeke v. Gordon,

---

[2]Boyce has been held by some authorities to have been abrogated in part, on other grounds, by Neitzke v. Williams, 490 U.S. 319 (1989)(insofar as Neitzke establishes that a complaint that fails to state a claim, under Federal Rule of Civil Procedure 12(b)(6), does not by definition merit *sua sponte* dismissal under 28 U.S.C. § 1915(e)(2)(B)(i) [formerly 28 U.S.C. § 1915(d)], as "frivolous").

2

439 U.S. 970 (1978), and a federal district court is charged with liberally construing a complaint or petition filed by a *pro se* litigant to allow the development of a potentially meritorious case.  See Hughes v. Rowe, 449 U.S. 5, 9-10 & n. 7 (1980)(*per curiam*); and Cruz v. Beto, 405 U.S. 319 (1972).  When a federal court is evaluating a *pro se* complaint or petition, the plaintiff's or petitioner's allegations are assumed to be true.  Fine v. City of New York, 529 F.2d 70, 74 (2nd Cir. 1975).  Even under this less stringent standard, the complaint is subject to summary dismissal.  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court.  Weller v. Department of Social Services, 901 F.2d 387, 1990 U.S.App. LEXIS® 6120 (4th Cir. 1990).

The undersigned is treating this case, in part, as a Bivens action.  In Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 397 (1971), the Supreme Court established a direct cause of action under the Constitution of the United States against federal officials for the violation of federal constitutional rights.  "Bivens is the case establishing, as a general proposition, that victims of a constitutional violation perpetrated by a federal actor may sue the offender for damages in federal court despite the absence of explicit statutory authorization for such suits."  Wright v. Park, 5 F.3d 586, 589 n. 4, 1993 U.S.App. LEXIS® 25129 (1st Cir. 1993), which *cites*, *inter alia*, Carlson v. Green, 446 U.S. 14, 18 (1980)(restating Bivens rule).

A Bivens claim is analogous to a claim under 42 U.S.C. § 1983: federal officials cannot be sued under 42 U.S.C. § 1983 because they do not act under color of *state* law.  *See* Harlow v. Fitzgerald, 457 U.S. 800, 814-820 & n. 30 (1982).  Harlow, which is often

cited for the principle of the qualified immunity of state officials for acts within the scope of their employment, was brought against a federal official. In footnote 30 of the opinion in Harlow, the Supreme Court stated that Harlow was applicable to state officials sued under 42 U.S.C. § 1983. In other words, case law involving § 1983 claims is applicable in Bivens actions and *vice versa*. *See* Farmer v. Brennan, 511 U.S. 825, 128 L.Ed.2d 811, 114 S.Ct. 1970, 1994 U.S. LEXIS® 4274 (1994); Bolin v. Story, 225 F.3d 1234, 1241-1242, 2000 U.S.App. LEXIS® 22501 (11th Cir. 2000); and Campbell v. Civil Air Patrol, 131 F.Supp.2d 1303, 1310 n. 8, 2001 U.S.Dist. LEXIS® 2542 (M.D.Ala. 2001)(noting that, since courts have expanded the Bivens remedy, usually used for a Fourth Amendment violation, to allow direct action under First and Fifth Amendments, "the court shall refer interchangeably to cases" decided under both § 1983 and Bivens).

The United States cannot be sued without its express consent, and express consent is a prerequisite to a suit against the United States. United States v. Mitchell, 463 U.S. 206, 212 (1983). The bar of sovereign immunity cannot be avoided by naming a federal entity, agency, or department as a defendant. *See* Campbell v. United States, 496 F. Supp. 36, 37-38 & n. * (E.D.Tenn. 1980). The United States Congress is entitled to summary dismissal because it cannot be sued under Bivens. FDIC v. Meyer, 510 U.S. 471, 486, 127 L.Ed.2d 308, 114 S.Ct. 996, 1994 U.S. LEXIS® 1866 (1994)(declining to extend Bivens remedy to federal agencies and departments).

Even if this case is treated as one brought under the Federal Tort Claims Act (FTCA), the United States would be entitled to summary dismissal on the basis of sovereign immunity. A suit under the Federal Tort Claims Act lies only against the United States, and a federal district court lacks subject-matter jurisdiction over claims asserted

against federal agencies or individual federal employees.  *See* Myers and Myers, Inc. v. United States Postal Service, 527 F.2d 1252, 1256 (2nd Cir. 1975).[3]  Additionally, an administrative tort claim must first be filed with the appropriate federal agency before commencement of a civil action in a district court under the Federal Tort Claims Act.  *See* 28 C.F.R. § 14.2; the Standard Form 95; and 28 U.S.C. § 2401(b), which provides that a tort claim "shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues[.]".  There is no indication that the plaintiff has filed an administrative tort claim with the United States Department of Justice.  Under the FTCA, "the requirement of filing an administrative claim is jurisdictional and may not be waived."  Henderson v. United States, 785 F.2d 121, 123, 1986 U.S.App. LEXIS® 22913 (4th Cir.1986), which is cited in Kokotis v. United States Postal Service, 223 F.3d 275, 278, 2000 U.S.App. LEXIS® 18655 (4th Cir. 2000).

The individual members (United States Representatives and United States Senators) of the United States Congress are subject to summary dismissal because of legislative immunity.  *See* Bogan v. Scott-Harris, 523 U.S. 44, 140 L.Ed.2d 79, 118 S.Ct. 966, 1998 U.S. LEXIS® 1596 (1998)(legislators at all levels of government are entitled to immunity for "legislative activities"); Tenney v. Brandhove, 341 U.S. 367 (1951); and Haskell v. Washington Township, 864 F.2d 1266, 1277, 1988 U.S.App. LEXIS® 17124 (6th Cir. 1988)("legislators of any political subdivision of a state are absolutely immune from

---

[3]The Federal Tort Claims Act (FTCA) waives the sovereign immunity of the United States in certain situations.  Litigants must strictly comply with the requirements of the FTCA.  *See* 28 U.S.C. § 2675; and United States v. Kubrick, 444 U.S. 111, 117-118 (1979).  The administrative claim must be submitted in writing within two (2) years after the claim accrues.  28 U.S.C. § 2401(b).  When the United States has denied an administrative claim filed under the FTCA, the claimant has six months to bring suit in a federal district court.  28 U.S.C. § 2401(b).

5

liability under 42 U.S.C. § 1983 insofar as they are acting in a legislative capacity"). *See also* Lake Country Estates, Inc. v. Tahoe Regional Planning Agency, 440 U.S. 391, 403, 59 L.Ed.2d 401, 99 S.Ct. 1171 (1979)(legislative immunity extends to "regional" legislatures); and Rabkin v. Dean, 856 F. Supp. 543, 546, 1994 U.S.Dist. LEXIS® 13702 (N.D.Cal. 1994).  Furthermore, a federal district court may not ask present or former members of legislative bodies why they passed or did not pass a particular statute, or why they authorized funds for one purpose and did not authorize funds for another purpose. South Carolina Education Association v. Campbell, 883 F.2d 1251, 1989 U.S.App. LEXIS® 12938 (4th Cir. 1989), *cert. denied*, 493 U.S. 1077 (1990).  *Cf.* Sea Cabin on Ocean IV Homeowners Association v. City of North Myrtle Beach, 828 F. Supp. 1241, 1242 n. 1, 1993 U.S.Dist. LEXIS® 11079 (D.S.C. 1993).

The plaintiff cannot "represent" the "Allied Military Government" in the above-captioned case.  The undersigned has pointed out, in many of the plaintiff's prior cases, that the Allied Military Government no longer exists.[4]

---

[4] Quintin Littlejohn is, once again, obviously referring to the entity that governed the British, American (United States), and French sectors of Germany after the surrender of the Nazi regime on May 8, 1945, until the establishment of the Federal Republic of Germany in 1949.  *See* Edward M. Andries, On the German Constitution's Fiftieth Anniversary: Jacques Maritain and the 1949 Basic Law (Grundgesetz), 13 Emory Int'l L. Rev. 1(Spring 1999):

> It was not until after the experience of the Nazi regime that German jurists, along with their academic colleagues elsewhere in Europe, refocused their interest on the essence and potential of natural law theory.  This juridical soul-searching took place while the Allies assisted a defeated Germany in outlining its future.  During this same period, Jacques Maritain published and lectured throughout Europe. He represented the French government as its ambassador to the Vatican and led United Nations conferences on the soon-to-be-ratified Universal Declaration of Human Rights.  * * *
>
> After the defeat of Germany, the Allies divided the country into four zones, occupied by the Soviet Union, France, Britain, and the United States.  The Soviet Union's fears of a united Germany kept it from joining the Western countries, who combined their occupied territories.  The three Western Allies prompted German leaders to convene a constituent assembly to draft a constitution for a new (West) Germany. * * *  The Allies produced the

(continued...)

[4] (...continued)
>  famous "Frankfurt Documents," which required a democratic constitution that established a federal republic with protection for the rights of its constituent states and citizens.  * * *
>
>  The Parliamentary Council, responsible for drafting the new constitution, consisted of representatives elected by the state parliaments in the Western Occupation zones.  This Council, chaired by Konrad Adenauer, adopted the Basic Law on May 8, 1949, by a vote of fifty-three to twelve. After ratification by the state parliaments, the Parliamentary Council promulgated the Basic Law on May 23, 1949.

*See also* Wolfgang Friedmann, The Allied Military Government of Germany (1947).

During the first fifty years of the Federal Republic of German (West Germany), the Allied Military Government, technically, continued to function, especially in West Berlin.  *See* Mathias Reimann, Takeover: German Reunification Under a Magnifying Glass, 96 Mich. L. Rev. 1988  (May, 1998):

> In the meantime, the Two-Plus-Four negotiations, between the two German states and the four World War II allies, advanced toward the renunciation of the rights that the allies still had with regard to Germany and, especially, Berlin.  On September 12, after the principal players, the West German and Soviet governments, had reached agreement on the crucial issues, the Two-Plus-Four Treaty was signed.  It provided for German reunification, accorded Germany full sovereignty, and thus finally closed the post-World War II period in Europe.

As a result of the reunification of Germany in 1990 and the ratification of the "Two-Plus-Four" Treaty in 1991, the Allied Military Government for Germany has no longer existed:

> On October 3, 1990, the GDR ceased to exist and its territory became part of the Federal Republic of Germany.  The five states formed in the GDR under the statute of July 22, 1990 * * * — Brandenburg, Mecklenburg-Vorpommern, Sachsen, Sachsen-Anhalt and Thuringen — became Lander of the Federal Republic of Germany.  East Berlin became part of Land Berlin.  As far as German law is concerned, unification was implemented by the GDR's accession to the Federal Republic in accordance with Article 23 of the Federal Constitution. * * * The details were agreed upon in the Unification Agreement of August 31, 1990. * * *
>
> The act of unification, however, took place within a unique international framework that had applied to Germany since 1945.  In the Berlin Declaration of June 5, 1945, the four Allied powers had assumed "supreme authority with respect to Germany." * * * This declaration had never been revoked, even though the Allies later entered into various treaties with each of the German states that altered their relationships, including the Convention on Relations of 1955.  Consequently, the Treaty on the Final Settlement with Respect to Germany was concluded by the Federal Republic of Germany, the German Democratic Republic and the four powers and signed in Moscow on September 12, 1990, immediately before the GDR acceded to the Federal Republic. * * * In Article 7 of the Treaty, the four powers terminated their rights and responsibilities relating to Berlin and to Germany as a whole. United Germany is to have full sovereignty over its internal and external affairs.  The Treaty entered into force on March 15, 1991, when the Soviet Union, as the last party, deposited its instrument of ratification. However, the four powers had already suspended operation of their rights in a declaration that took effect on October 3 with German unification.

Jochen A. Frowein, The Reunification of Germany, 86 Am. J. Int'l L. 152, 154-155 (Spring 1992).

Moreover, the petitioner cannot represent the Allied Military Government, even if it still existed, because he is not admitted to practice before this court as an attorney, and does not have standing to bring suit on behalf of other persons or entities. *See* Estate of Kerner v. United States, 895 F.2d 1159, 1162 & n. 3, 1990 U.S.App. LEXIS® 1995 (7th Cir. 1990), where the Court noted: "'the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim on the legal rights or interests of third parties.'" For example, it is well settled that a *pro se* litigant may not represent a minor in a civil action. *See, e.g.,* Tse-Ming Cheung v. Youth Orchestra Foundation of Buffalo, 906 F.2d 59, 60-61, 1990 U.S.App. LEXIS® 10021 (2nd Cir. 1990). "A non-attorney parent must be represented by counsel when bringing an action on behalf of a child." Knox ex rel. Chambers v. Hayward Unified School District, 1995 U.S.Dist. LEXIS® 8379, 1995 WESTLAW® 364156 (N.D.Cal., June 1, 1995)(collecting cases). Similar case law applies to suits purportedly brought by individual *pro se* litigants on behalf of corporations, partnerships, unincorporated associations, or estates. *See, e.g.,* First Hartford Corporation Pension Plan and Trust, 194 F.3d 1279, 1290, 1999 U.S.App. LEXIS® 26237 (Fed.Cir. 1999)(*pro se* actions by non-attorneys on behalf of corporations "fail for lack of standing"); and Pridgen v. Andresen, 113 F.3d 391, 392-393, 1997 U.S.App. LEXIS® 11630 (2nd Cir. 1997)(*pro se* litigant may not represent corporation, estate, partnership, or "his or her minor child"), where the Court noted that such limits on *pro se* representation "serve the interests of the represented party as well as the interests of adversaries and the court." *See also* Batac Development Corp. v. B&R Consultants, Inc., 2000 U.S.Dist. LEXIS® 3695, 2000 WESTLAW® 307400 (S.D.N.Y., March 23, 2000):

> It has uniformly been held by the Second Circuit and all of the other circuits that the provisions of 28 U.S.C. § 1654 * * * prohibit a non-attorney individual from representing a corporation in the federal courts. * * *
>
> Under the weight of this authority, Batac quite plainly cannot represent the interests of the plaintiff in this Court, even though he is the corporation's sole shareholder. This consequence might puzzle Batac who undoubtedly believes that he can fairly and effectively advance the interests of his company in this litigation. But sound reasons exist for this rule. The interests of a corporation and its principal frequently overlap but are not identical in all respects. Thus, requiring separate counsel for a corporation works as an independent safeguard of its interests. Moreover, the Second Circuit has explained that the reasons for requiring a corporate litigant to have legal representation include principally that the conduct of litigation by a nonlawyer creates unusual burdens not only for the party he represents but as well for his adversaries and the court. The lay litigant frequently brings pleadings that are awkwardly drafted, motions that are inarticulately presented, proceedings that are needlessly multiplicative. In addition to lacking the professional skills of a lawyer, the lay litigant lacks many of the attorney's ethical responsibilities[.]

Batac Development Corp. v. B&R Consultants, Inc., supra, 2000 WESTLAW® 307400 at *1-*2.

As earlier stated, no relief is expressly requested by the plaintiff in the complaint. In other words, the plaintiff has not disclosed what relief (if any) he is requesting. When a plaintiff has failed to ask for relief, a federal district court "is faced with the prospect of rendering an advisory opinion; federal courts may not render advisory opinions, however." Humphreys v. Renner, 1996 WESTLAW® 88804 (N.D.Cal., February 26, 1996), *following* FCC v. Pacifica Foundation, 438 U.S. 726, 735 (1978)("[F]ederal courts have never been empowered to issue advisory opinions."). *See also* Public Service Co. v. United States Environmental Protection Agency, 225 F.3d 1144, 1148 n. 4, 2000 U.S.App. LEXIS® 22180 (10th Cir. 2000)(company's failure to ask for relief constitutes a request for an advisory opinion, which is barred by Article III). *Cf.* Herb v. Pitcairn, 324 U.S. 117, 126

(1945)("We are not permitted to render an advisory opinion[.]");[5] Neitzke v. Williams, supra, 490 U.S. at 322-330 (*held*: although district courts should not blur the distinction between the standards applicable to a Rule 12(b)(6) dismissal for failure to state a claim upon which relief can be granted and a dismissal under 28 U.S.C. § 1915 because a claim is frivolous, a patently insubstantial complaint, petition, or pleading may be dismissed); and United States v. Burlington Northern Railroad Co., 200 F.3d 679, 699, 1999 U.S.App. LEXIS® 33143 (10th Cir. 1999)(refusing to respond to party's "request for guidance in future cases" because the request was "tantamount to a request for an advisory opinion").

### *Recommendation*

Accordingly, it is recommended that the District Court summarily dismiss the above-captioned case *without prejudice* and without issuance and service of process. *See* Denton v. Hernandez, supra; Neitzke v. Williams, supra; Haines v. Kerner, supra; Brown v. Briscoe, 998 F.2d 201, 202-204 & n. * (4th Cir. 1993), *replacing* unpublished opinion originally tabled at 993 F.2d 1535 (4th Cir. 1993); Boyce v. Alizaduh, supra; Todd v. Baskerville, supra, 712 F.2d at 74; and 28 U.S.C. § 1915(e)(2)(B)[essentially a redesignation of "old" § 1915(d)]. *See also* In Re Prison Litigation Reform Act, 105 F.3d 1131, 1134, 1997 U.S.App. LEXIS® 1763 (6th Cir. 1997)(pleadings by non-prisoners should also be screened); and Fitzgerald v. First East Seventh Street Tenants Corp., 221 F.3d 362, 363-364, 2000 U.S.App. LEXIS® 18180 (2nd Cir. 2000)("District courts . . . are . . . capable of determining when an action is frivolous.  Indeed, as courts

---

[2]Other portions of the decision in Herb v. Pitcairn have been superannuated by later case law.  *See* Michigan v. Long, 463 U.S. 1032 (1983).

10

of first instance, district courts are especially likely to be exposed to frivolous actions, and thus have an even greater need for inherent authority to dismiss such actions quickly in order to preserve scarce judicial resources."). The plaintiff's attention is directed to the Notice on the next page.


September 14, 2006                                    s/William M. Catoe
Greenville, South Carolina                            United States Magistrate Judge

11

### Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation"
### &
# The Serious Consequences of a Failure to Do So

The plaintiff is, hereby, notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within **ten (10) days** of the date of service.  28 U.S.C. § 636 and Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail.  Fed. R. Civ. P. 6.  A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge.  See Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410, 1993 U.S.Dist. LEXIS® 3411 (D.S.C. 1993).

During the ten-day period for filing objections, **but not thereafter**, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections.  **Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections.**  See Keeler v. Pea, 782 F. Supp. 42, 43-44, 1992 U.S.Dist. LEXIS® 8250 (D.S.C. 1992); and Oliverson v. West Valley City, 875 F. Supp. 1465, 1467, 1995 U.S.Dist. LEXIS® 776 (D.Utah 1995).  Failure to file specific, written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge.  See United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object.  In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues.  Howard v. Secretary of HHS, 932 F.2d 505, 508-509, 1991 U.S.App. LEXIS® 8487 (6th Cir. 1991).  *See also* Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985).  In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> **A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object.  The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. \* \* \* This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act.  We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.**

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> **Just as a complaint stating only 'I complain' states no claim, an objection stating only "I object" preserves no issue for review.  \* \* \*  A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.**

*See also* Branch v. Martin, 886 F.2d 1043, 1046, 1989 U.S.App. LEXIS® 15,084 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 6 n. 1 (3rd Cir. 1984)(*per curiam*)("plaintiff's objections lacked the specificity necessary to trigger *de novo* review").  **This notice, hereby, apprises the plaintiff of the consequences of a failure to file specific, written objections.**  *See* Wright v. Collins, supra; and Small v. Secretary of HHS, 892 F.2d 15, 16, 1989 U.S.App. LEXIS® 19,302 (2nd Cir. 1989).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

**Larry W. Propes, Clerk**
**United States District Court**
**Post Office Box 10768**
**Greenville, South Carolina 29603**